UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

CHARLES AMARA,

               Plaintiff,

   v.                                   3:25-cv-380 (AMN/MJK)

JONATHAN HATTENRATH; CHRISTOPHER
JOHNSON; DONALD A. OUIMET, JR.; and DYLAN
OSBORNE,

               Defendants.

---

APPEARANCES:                        OF COUNSEL:

**CHARLES AMARA**
571 Sprague Road
Afton, NY 13730
Plaintiff *pro se*

**New York State Office of the Attorney General**    **JENNIFER J. CORCORAN, ESQ.**
The Capitol
Albany, NY 12224
*Counsel for Defendants Jonathan Hattenrath,*
*Christopher Johnson, and Dylan Osborne*

**THE LONG LAW FIRM, PLLC**    **JAMES A. LONG, ESQ.**
120 E. Washington Street – Suite 928
Syracuse, NY 13202
*Counsel for Defendant Donald A. Ouimet, Jr.*

**Hon. Anne M. Nardacci, United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I.    INTRODUCTION

On March 26, 2025, Plaintiff *pro se* Charles Amara ("Plaintiff") commenced this suit pursuant to 42 U.S.C. § 1983 against Jonathan Hattenrath ("Hattenrath"), Christopher Johnson ("Johnson"), Donald A. Ouimet, Jr. ("Ouimet"), and Dylan Osborne ("Osborne"). *See* Dkt. No. 1

1

("Complaint"). Plaintiff's Complaint alleges multiple constitutional and state law claims against Defendants Hattenrath and Johnson arising from a traffic stop that took place on March 29, 2022. *See id.* at ¶¶ 11-31. Plaintiff also alleges that Defendant Ouimet coerced Plaintiff to wear a face covering during a court appearance on July 5, 2022 relating to that traffic stop, and in doing so acted negligently. *See id.* at ¶¶ 32-37. Finally, Plaintiff alleges that Defendant Osborne committed Fourth Amendment violations and acted negligently while on Plaintiff's property during a separate incident on April 20, 2024. *See id.* at ¶¶ 40-46.

Defendants moved to dismiss Plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(6). Dkt. No. 10, 24. Plaintiff only responded to the motion filed by Defendants Hattenrath, Johnson, and Osborne. Dkt. No. 27.[1] All Defendants replied. Dkt. Nos. 28, 30.

For the reasons that follow, the Court grants Defendants' motions to dismiss.

## II. BACKGROUND

### A. The Parties

Plaintiff Charles Amara is an individual residing in Afton, New York. Dkt. No. 1 at ¶ 5. Defendants Jonathan Hattenrath and Dylan Osborne are Troopers with the New York State Police. *Id.* at ¶¶ 6, 9. Defendant Christopher Johnson is a Sergeant with the New York State Police. *Id.* at ¶ 7. At all relevant times, Defendant Donald A. Ouimet, Jr., was the Afton Town Court Judge. *Id.* at ¶ 8.

---

[1] Plaintiff did not file a response to Defendant Ouimet's motion to dismiss, nor did Plaintiff address any of Defendant Ouimet's arguments in his opposition to the motion filed by Defendants Hattenrath, Johnson, and Osborne. *See generally* Docket; Dkt. No. 27.

### B.    Factual Background

#### 1.    Events of March 29, 2022

Plaintiff alleges that on March 29, 2022, Defendant Hattenrath pulled Plaintiff over while Plaintiff was operating his vehicle on State Highway 7 in Afton, New York. *See id.* at ¶ 11.[2] During the ensuing encounter, Plaintiff refused to give his name or driver's license to Defendant Hattenrath. *Id.* at ¶ 12. Plaintiff alleges that Defendant Hattenrath "did not show a lawful warrant or state probable cause of a crime at any time[]" and that Hattenrath told him that "no crime was being committed." *Id.* at ¶¶ 16, 14. Plaintiff also alleges that Defendant Hattenrath told him that he was not free to go. *Id.* at ¶ 15.

Plaintiff alleges that, after speaking with Plaintiff, Defendant Hattenrath went to his police vehicle to consult his supervisor, Defendant Johnson. *Id.* at ¶ 17. Plaintiff alleges that when Defendant Hattenrath returned, he told Plaintiff that Plaintiff needed to provide his information or else he would be placed in custody for obstructing governmental administration. *Id.* at ¶ 18. After Plaintiff again refused to give his name or documentation, Defendant Hattenrath placed Plaintiff under arrest. *Id.* at ¶ 20. Plaintiff alleges that during the arrest, Defendant Hattenrath handcuffed Plaintiff and "put his hands on Plaintiff's body and searched Plaintiff's pockets." *Id.* at ¶ 21.

Plaintiff alleges that Defendant Hattenrath "told Plaintiff he had the right to remain silent[,]" and then transported Plaintiff to State Police barracks "Troop C." *Id.* at ¶ 24. While there, Plaintiff alleges that Defendants Hattenrath and Johnson "seized and searched Plaintiff's wallet," photographed and fingerprinted Plaintiff, and issued Plaintiff "several documents including an appearance ticket with the Afton Town Court[.]" *Id.* at ¶ 26.

---

[2] The Complaint does not allege facts indicating that Defendant Hattenrath lacked reasonable suspicion or probable cause to initiate the traffic stop. *See* Dkt. No. 1 at ¶ 11.

3

### 2.    Events of July 5, 2022

On July 5, 2022, Plaintiff arrived at Afton Town Court for his scheduled hearing in relation to his arrest on March 29, 2022.  *See* Dkt. No. 1 at ¶¶ 32, 38.  Plaintiff alleges that Defendant Ouimet told Plaintiff that in order to attend court, he must either show proof of vaccination against SARS-CoV-2 or wear a mask or face covering.  *Id.* at ¶ 33.  Plaintiff alleges that Defendant Ouimet stated that if Plaintiff refused to wear a mask or face covering, Plaintiff would not be allowed inside the court building and that his scheduled hearing would proceed without him.  *Id.* at ¶ 36.  Plaintiff then alleges that he "was finally compelled to wear a face covering," which directly caused him "emotional distress, embarrassment, and went against his sincerely held beliefs."[3]  *Id.* at ¶ 37.

Ultimately, the town prosecutor moved to dismiss the charge against Plaintiff for obstructing governmental administration, and Defendant Ouimet granted the motion.  *Id.* at ¶ 38.

### 3.    Events of April 20, 2024

Plaintiff alleges that on April 20, 2024, Defendant Osborne drove on to Plaintiff's property without Plaintiff's permission.  *Id.* at ¶ 40.[4]  Plaintiff then alleges that Defendant Osborne stepped out of his police vehicle to speak with Plaintiff, and because Defendant Osborne "had deadly weapons on his person," Defendant Osborne "directly put Plaintiff in emotional distress, and made

---

[3] Plaintiff states at numerous points that certain of Defendants' alleged actions went against "his sincerely held beliefs." *See* Dkt. No. 1 at ¶¶ 30, 35, 37, 64-66. At no point, however, does Plaintiff state the content of his sincerely held beliefs nor does he specifically allege that any defendant violated his First Amendment rights of expression or free exercise. *See generally* Dkt. No. 1.

[4] Plaintiff's Complaint does not allege facts indicating that Defendant lacked probable cause to enter Plaintiff's property. *See* Dkt. No. 1 at ¶ 40. In his response brief, Plaintiff appears to indicate that Defendant Osborne tried to initiate a traffic stop, and in doing so followed Plaintiff to Plaintiff's property. Dkt. No. 27 at 8 ("Following Plaintiff for over 14 miles and entering private property based on a mere alleged infraction is unreasonable and excessive in scope.").

him scared for his life, liberty, and property." *Id.* at ¶¶ 41-45. Plaintiff finally alleges that Defendant Osborne left without further action. *Id.* at ¶ 46.

### C.    Plaintiff's Claims

Based on the March 29, 2022 incident, Plaintiff alleges false arrest, assault, unlawful search and seizure, invasion of privacy, malicious prosecution, and negligence claims against Defendant Hattenrath, Dkt. No. 1 at ¶¶ 47-76, and unlawful search and seizure and negligence claims against Defendant Johnson. *Id.* at ¶¶ 77-86. Based on his July 5, 2022 court appearance, Plaintiff alleges coercion and negligence claims against Defendant Ouimet. *Id.* at ¶¶ 87-94. Finally, based on the April 20, 2024 incident, Plaintiff alleges unlawful search and seizure, invasion of privacy, and negligence claims against Defendant Osborne. *Id.* at ¶¶ 95-108.

## III.    STANDARD OF REVIEW

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) tests the legal sufficiency of a party's claim for relief. *See Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007). In considering legal sufficiency, a court must accept as true all well-pled facts in the complaint and draw all reasonable inferences in the pleader's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). This presumption, however, does not extend to legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although a court's review of a motion to dismiss is generally limited to the facts presented in the pleadings, the court may consider documents that are "integral" to the pleadings even if they are neither physically attached to, nor incorporated by reference into, the pleadings. *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (quoting *Chambers*, 282 F.3d at 152-53).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to sho[w] that the pleader is entitled to

5

relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (alteration in original) (quotation omitted). Under this standard, a pleading's "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.* at 555, and present claims that are "plausible on [their] face." *Id.* at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [his or her] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Id.* at 570.

"[I]n a *pro se* case, the court must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.'" *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2003) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)) (additional citations omitted). The Second Circuit has held that courts are obligated to "make reasonable allowances to protect *pro se* litigants" from inadvertently forfeiting legal rights merely because they lack a legal education. *Id.* (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)).

## IV.    DISCUSSION

### A.    Section 1983 Claims Against Defendants Hattenrath, Johnson, and Osborne in Their Official Capacities

To state a claim under 42 U.S.C. § 1983 ("Section 1983"), a plaintiff must allege that: (1) the defendant was acting under color of state law, and (2) the defendant's actions deprived the plaintiff of "rights, privileges, or immunities secured by the Constitution or laws of the United States." *Bell v. Cornejo*, 592 F.3d 121, 127 (2d Cir. 2010) (citation omitted). "The Eleventh

6

Amendment bars suits for damages against states, state agencies, and state officials acting in their official capacities, absent the state's consent to suit or an express or statutory waiver of immunity." *Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001). Thus, to the extent that Plaintiff asserts Section 1983 claims against Defendants in their official capacities and seeks money damages, the Eleventh Amendment divests this Court of subject matter jurisdiction over such claims, and the Court accordingly dismisses them pursuant to Fed. R. Civ. Pro. 12(h)(3). *See, e.g.*, *Jimenez v. Chung*, No. 22-CV-3090 (JMA) (AYS), 2023 WL 2561789, at *3 (E.D.N.Y. Mar. 17, 2023).

Given Plaintiff's *pro se* status, the Court also construes the Complaint to assert its Section 1983 claims against all Defendants in their individual capacities. *See id.* The Court assesses each such claim in turn.

### B.  Defendant Hattenrath

#### 1.  False Arrest

The elements of a claim for false arrest under Section 1983 are substantially the same as those for a claim of false arrest under state law. *Jocks v. Tavernier*, 316 F.3d 128, 134 (2d Cir. 2003). Under New York law, a plaintiff must allege that "(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." *Hernandez v. United States*, 939 F.3d 191, 199 (2d Cir. 2019) (quoting *McGowan v. United States*, 825 F.3d 118, 126 (2d Cir. 2016)) (internal quotation marks omitted). A confinement is "privileged" if it is based on "probable cause." *See, e.g.*, *Simpson v. City of New York.*, 793 F.3d 259, 265 (2d Cir. 2015). "A police officer has probable cause to arrest when he has knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution

in the belief that the person to be arrested has committed or is committing a crime." *Hulett v. City of Syracuse*, 253 F. Supp. 3d 462, 494 (N.D.N.Y. 2017) (internal quotations and citations omitted). A court assessing probable cause "considers only the facts 'available to the officer at the time of the arrest and immediately before it.'" *Ashley v. City of New York*, 992 F.3d 128, 136 (2d Cir. 2021) (quoting *Stansbury v. Wertman*, 721 F.3d 83, 89 (2d Cir. 2013)).

Under New York law, when the operator of a motor vehicle fails or refuses to identify himself to a police officer, the officer has probable cause to arrest. *See People v. Bohn,* 397 N.Y.S.2d 514, 515 (N.Y. App. Term 1977) (per curiam). Furthermore, when the operator of a motor vehicle refuses to exhibit a driver's license upon request by a police officer, that refusal creates a rebuttable presumption that the operator is not duly licensed. *People v. Griffin*, 456 N.Y.S.2d 334, 339 (N.Y. Sup. Ct. 1982); *see* N.Y. Veh. & Traf. Law § 507(2) (2020) ("Failure by a licensee to exhibit a license valid for operation under this chapter to any . . . police officer shall be presumptive evidence that he is not duly licensed."). Accordingly, New York courts have held that failing to show a driver's license to a requesting officer can warrant arrest pursuant to New York Vehicle and Traffic Law § 509. *See, e.g.*, *People v. Essic*, No. 73607-23, 2024 WL 4778776, at *4 (N.Y. Sup. Ct. Nov. 13, 2024) (finding that defendant's failure to provide officers with identification provided probable cause to arrest him); *People v. Taylor*, 871 N.Y.S.2d 791, 793 (N.Y. App. Div. 2008) (holding that police were justified in arresting and then frisking defendant before moving him to the police station because defendant failed to produce identification); *People v. Ellis*, 62 N.Y.2d 393, 396 (N.Y. 1984) ("Once it became evident that defendant could not be issued a summons on the spot because of his inability to produce identification, the officers were warranted in arresting him to remove him to the police station and in frisking him before doing so."); *People v. Copeland*, 39 N.Y.2d 986, 987 (N.Y. 1976) (holding that arrest and search during

8

traffic stop were lawful because defendant stated he did not possess license); *see also* N.Y. Veh. & Traf. Law § 509(1) (2012) ("[N]o person shall operate or drive a motor vehicle upon a public highway of this state . . . unless he is duly licensed pursuant to the provisions of this chapter.").

Here, Plaintiff's allegations indicate that Defendant Hattenrath had probable cause to arrest Plaintiff.[5] Plaintiff admits that during a traffic stop, he refused multiple requests to identify himself by name or present his driver's license to Defendant Hattenrath. Dkt. No. 1 at ¶¶ 12, 19.[6] Plaintiff appears to argue that Defendant Hattenrath relied on the wrong provision of the New York Penal Law when arresting Plaintiff for obstructing governmental administration, *see* Dkt. No. 27 at 7, but, even if true, that does not bear on whether it was objectively reasonable for Defendant Hattenrath to believe he had probable cause to arrest Plaintiff.[7] *See Wachtler v. Cnty. of Herkimer*, 35 F.3d 77, 80 (2d Cir. 1994) (holding that even though officer who arrested driver pursuant to N.Y. Pen. Law § 195.05 for failing to produce license likely relied on the wrong provision, officer still had probable cause because driver was legally obligated to show his license under N.Y. Veh.

---

[5] As part of their Motion, Defendants Hattenrath, Johnson, and Osborne attach an incident report, arrest report, and three uniform traffic tickets associated with this traffic stop. Dkt. No. 24-3 at 1-4, 7-9. The Court takes judicial notice of these documents as matters of public record. "[A] district court may rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6)[,]" including "arraignments, arrest reports, criminal complaints and indictments, and certificates of disposition." *Harris v. Nassau Cnty.*, No. 13-CV-4728 (NGG)(ST), 2016 WL 3023265, at *3 (E.D.N.Y. May 24, 2016).

[6] Plaintiff does not allege any facts indicating that Defendant Hattenrath lacked probable cause or reasonable suspicion to initiate the traffic stop in the first place. *See* Dkt. No. 1 at ¶¶ 11-16.

[7] In making this argument, Plaintiff cites two cases whose existence the Court has been unable to verify: "*People v. Beriguete*, 51 Misc. 3d 1207(A) (Crim. Ct. N.Y. Cty. 2016)" and "*People v. Harp*, 39 Misc. 3d 1213(A) (Crim. Ct. N.Y. Cty. 2013)." As to fictitious legal citations, Fed. R. Civ. Pro. 11(b) provides that all litigants, including *pro se* litigants, may be subject to sanctions for failing to verify that all legal citations in their submissions are accurate. *See Brown v. Fat Dough Inc.*, No. 5:22-cv-761 (ECC/ML), 2025 WL 2663170, at *4 (N.D.N.Y. Sept. 17, 2025). The Court declines to consider sanctions against Plaintiff at this time, but Plaintiff is warned that he faces a substantial risk of sanctions if he submits inaccurate legal citations in the future. *See id.* at *5.

& Traf. Law § 507(2)), *abrogated on other grounds by Murphy v. Hughson*, 82 F.4th 177 (2d Cir. 2023).

Therefore, because Plaintiff has alleged that he refused to identify himself or present a driver's license during a traffic stop, the Court finds that Defendant Hattenrath had probable cause to arrest Plaintiff and accordingly dismisses Plaintiff's claim for false arrest.

### 2.    Assault

"A lawful arrest is not an assault or battery under New York law, provided the force used is reasonable." *Figueroa v. Mazza*, 825 F.3d 89, 105 n. 13 (2d Cir. 2016) (citation omitted). "When assault and battery claims are brought against law enforcement personnel who had probable cause to arrest, 'assault and battery claims under New York law parallel the Fourth Amendment standard governing the use of force incident to a lawful arrest.'" *Rizk v. City of New York*, 462 F. Supp. 3d 203, 228-29 (E.D.N.Y. 2020) (quoting *Tianshu Li v. United States*, No. 05-CV-6237 (NRB), 2009 WL 3321014, at *1 n. 2 (S.D.N.Y. Oct. 8, 2009)). Therefore, "except for [Section] 1983's requirement that the tort be committed under color of state law, the elements for a claim of assault and battery against law enforcement officers under New York law and a claim of excessive force under [Section] 1983 are the same." *Cabral v. City of New York*, No. 12-CV-4659 (LGS), 2014 WL 4636433, at *10 (S.D.N.Y. Sept. 17, 2014) (quotation marks and citation omitted), *aff'd*, 662 F. App'x 11 (2d Cir. 2016).

To succeed on a Fourth Amendment excessive force claim, a plaintiff must show that the defendant's use of force was "objectively unreasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Hulett v. City of Fowler*, 253 F. Supp. 3d 462, 491 (N.D.N.Y. 2017) (citations and internal quotations marks omitted). When assessing whether force is unreasonable, a court should pay "careful attention to

10

the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Soares v. Connecticut*, 8 F.3d 917, 921 (2d Cir. 1993) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)).  In doing so, a court takes the perspective of "a reasonable officer on the scene" rather than that of hindsight. *Brown v. City of New York*, 798 F.3d 94, 100 (2d Cir. 2015) (quoting *Graham*, 490 U.S. at 397).

The Supreme Court's "Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham*, 490 U.S. at 396.  "The police are not required to utilize the least amount of force possible to place someone into custody." *Brennan v. City of Middletown*, No. 18 Civ. 6148, 2020 WL 3820195, at *7 (S.D.N.Y. July 8, 2020).

Here, the Court considers Plaintiff's allegations in light of its finding that Defendant Hattenrath had probable cause to arrest Plaintiff. *See supra* Section IV.B.1.  Plaintiff fails to adequately allege that Defendant Hattenrath used excessive force in effectuating his lawful arrest and therefore also fails to adequately allege assault.  Plaintiff specifically alleges that Defendant Hattenrath "placed Plaintiff in handcuffs" and "continued to touch and place his hands on Plaintiff's body before and after arriving" at the State Police barracks. Dkt. No. 1 at ¶¶ 53-54.  At no point does Plaintiff allege that Defendant Hattenrath used any further force or that he sustained injuries resulting from his arrest. *See id.* at ¶¶ 47-55; *Stokes v. City of New York*, No. 05-CV-0007 (JFB)(MDG), 2007 WL 1300983, at *11 (E.D.N.Y. May 3, 2007) (holding that a "routine frisk and handcuffing" during a lawful arrest does not by itself constitute excessive force).

Accordingly, the Court finds that Plaintiff has not adequately alleged that Defendant Hattenrath used excessive force against Plaintiff and dismisses Plaintiff's claim for assault.

11

### 3.    Unlawful Search and Seizure and Malicious Prosecution

The Fourth Amendment protects against "unreasonable searches and seizures," which is to say that its "proper function is to constrain, not against all intrusions as such, but against intrusions which are not justified in the circumstances, or which are made in an improper manner." *Maryland v. King*, 569 U.S. 435, 447 (2013) (quoting *Schmerber v. California*, 384 U.S. 757, 768 (1966)). As such, "the ultimate measure of constitutionality of a government search is 'reasonableness.'" *Id.* (quoting *Vernonia School Dist. 47J v. Acton*, 515 U.S. 646, 652 (1995)).

In the context of an arrest, "[i]t is beyond dispute that 'probable cause provides legal justification for arresting a person suspected of a crime, and for a brief period of detention to take the administrative steps incident to arrest.'" *Id.* at 449 (quoting *Gerstein v. Pugh*, 420 U.S. 103, 113-14 (1975)). Such administrative steps have long included "photographing and fingerprinting as part of routine identification processes." *Id.* at 459 (quoting *Smith v. United States*, 324 F.2d 879, 882 (D.C. Cir. 1963)). Finally, "[t]he validity of the search of a person incident to a lawful arrest has been regarded as settled from its first enunciation, and has remained virtually unchallenged." *United States v. Robinson*, 414 U.S. 218, 224 (1973).

To state a claim for malicious prosecution, a plaintiff must show that (1) the defendant initiated a criminal proceeding against plaintiff; (2) the proceeding terminated in plaintiff's favor; (3) the defendant lacked probable cause for initiating the proceeding; and (4) the defendant's actions were motivated by actual malice. *Jocks*, 316 F.3d at 138 (citing *Murphy v. Lynn*, 118 F.3d 938, 947 (2d Cir. 1997)). Additionally, to pursue such a claim under Section 1983, a plaintiff must also show a post-arraignment seizure, which can be satisfied if he or she is required to attend criminal proceedings. *Id.*

12

Because both types of claims rely on a lack of probable cause, "[t]he existence of probable cause will defeat a claim of malicious prosecution and unreasonable search and seizure." *Fabrikant v. French*, 691 F.3d 193, 215 (2d Cir. 2012) (citing *Boyd v. City of New York*, 336 F.3d 72, 75 (2d Cir. 2003); *see also Guarniere v. City of New York*, No. 21cv1739 (DLC), 2023 WL 2456639, at *3 (S.D.N.Y. Mar. 10, 2023) (granting partial summary judgment and dismissing claims for unlawful search and seizure and malicious prosecution brought under Section 1983 because defendant officer had probable cause for arrest).

Here, in support of his claim for unreasonable search and seizure against Defendant Hattenrath, Plaintiff alleges that after arresting Plaintiff, Defendant Hattenrath "searched Plaintiff's pockets and wallet," "seized Plaintiff's wallet," "seized Plaintiff's photo images which were added to a law enforcement record database," and "seized Plaintiff's fingerprint scans which were added to a law enforcement record database." Dkt. No. 1 at ¶¶ 57-60. As to his claim for malicious prosecution, Plaintiff alleges that Defendant Hattenrath charged him with obstructing governmental administration and that the charge was ultimately dismissed. Dkt. No. 1 at ¶¶ 68-69, 71.

Contrary to Plaintiff's conclusory allegation that Defendant Hattenrath lacked probable cause at all relevant times, *see* Dkt. No. 1 at ¶¶ 57-60, 70, the Court has found that Defendant Hattenrath had probable cause to arrest Plaintiff, *see supra* Section IV.B.1. Therefore, the Court finds that the subsequent search of Plaintiff's belongings and the taking of his photograph and fingerprints was reasonable. The Court accordingly dismisses Plaintiff's claim for unlawful search and seizure as to Defendant Hattenrath. Similarly, because Defendant Hattenrath had probable cause to arrest Plaintiff and thereby initiate a criminal proceeding against him, the Court dismisses Plaintiff's claim for malicious prosecution.

### 4.    Invasion of Privacy

Plaintiff does not specify the law under which he brings his claim for invasion of privacy. *See* Dkt. No. 1 at ¶¶ 61-66.  Based on the wording of the Complaint, the Court construes Plaintiff's invasion of privacy claim as arising under the Fourth Amendment's protection against unreasonable search and seizure.[8]  As with Plaintiff's unlawful search and seizure claim, Plaintiff alleges in support of his invasion of privacy claim that Defendant Hattenrath "seized Plaintiff's photo images," "seized Plaintiff's fingerprints," and that said information was "added to public law enforcement records."  Dkt. No. 1 at ¶¶ 64-66.  Thus, the Court dismisses this claim for the same reason it dismisses Plaintiff's claim for unlawful search and seizure.

### 5.    Negligence

To state a claim for common law negligence under New York law, a plaintiff must allege "(i) a duty owed to the plaintiff by the defendant; (ii) breach of that duty; and (iii) injury substantially caused by that breach." *Lombard v. Booz-Allen & Hamilton, Inc.*, 280 F.3d 209, 215 (2d Cir. 2002).  However, a plaintiff cannot base a negligence claim on intentional conduct. *Onfroy v. Law Offices of Geoffry T. Mott, P.C.*, 751 F. Supp. 3d 195, 205 (E.D.N.Y. 2024) (citing *Morrow v. MetLife Invs. Ins. Co.*, 113 N.Y.S.3d 421, 423 (N.Y. App. Div. 2019).  Thus, when a plaintiff alleges conduct that is "intentional and deliberate and allegedly in [its] nature offensive," such conduct is "outside the ambit of actionable negligence." *Wahlstrom v. Metro-N. Commuter R. Co.*, 89 F. Supp. 2d 506, 531-32 (S.D.N.Y. 2000) (citation and internal quotation marks omitted).

---

[8] Specifically, Plaintiff states that he "has a reasonable expectation of privacy and to be left alone when peacefully exercising constitutionally secured rights."  Dkt. No. 1 at ¶ 62.  Justice Harlan articulated the reasonable expectation of privacy standard in his concurring opinion in *Katz v. United States*, which provided a two-prong test to determine whether a search is unreasonable under the Fourth Amendment: "first that a person have exhibited an actual (subjective) expectation of privacy and, second, that the expectation be one that society is prepared to recognize as 'reasonable.'"  389 U.S. 347, 361 (1967) (Harlan, J., concurring).

Plaintiff premises his negligence claim against Defendant Hattenrath on the same intentional conduct giving rise to Plaintiff's claims for false arrest, assault, unlawful search and seizure, and malicious prosecution. *See* Dkt. No. 1 at ¶¶ 72-76. Therefore, Court dismisses Plaintiff's negligence claim as to Defendant Hattenrath.[9]

## C.    Defendant Johnson

### 1.    Unlawful Search and Seizure

Plaintiff alleges that after he was brought to the State Police barracks, Defendant Johnson "searched Plaintiff's wallet" and "seized Plaintiff's wallet," thus leading Plaintiff to summarily conclude that Defendant Johnson "deprived Plaintiff of the constitutionally guaranteed right to be secure in his property against unlawful searche[s] and seizures." Dkt. No. 1 at ¶¶ 78-80.

Because the Court has found that Defendant Hattenrath had probable cause to arrest Plaintiff, s*ee supra* Section IV.B.1, and because Defendant Johnson searched Plaintiff's belonging incident to a lawful arrest, the Court dismisses Plaintiff's claim for unlawful search and seizure against Defendant Johnson.

### 2.    Negligence

Plaintiff also brings a claim for common law negligence against Defendant Johnson. Dkt. No. 1 at ¶¶ 81-86. Here too, Plaintiff bases his negligence claim on allegations constituting intentional conduct. *See* Dkt. No. 1 at ¶¶ 26, 78-79, 83. As such, the Court dismisses Plaintiff's negligence claim against Defendant Johnson.

---

[9] To the extent that the Complaint includes a claim for negligent infliction of emotional distress, the Court also dismisses such a claim. *See* Dkt. No. 1 at ¶ 76; *see also Dollard v. City of New York*, 408 F. Supp. 3d 231, 238-39 (E.D.N.Y. 2019) ("To the extent that a claim for negligence and/or [negligent infliction of emotional distress] is based upon injury incident to an arrest, a plaintiff must resort to the traditional tort remedies of false arrest, false imprisonment, and malicious prosecution.") (citations omitted).

**D.    Defendant Osborne**

Under Federal Rule of Civil Procedure 20, a plaintiff may typically sue multiple defendants in a single action only when the claims against each defendant arise out of the "same transaction" or "occurrence."  Fed. R. Civ. Pro. 20(a)(2).  Despite the fact that Plaintiff's allegations against Defendant Osborne arise out of an incident that occurred two years after his arrest by Defendant Hattenrath, in consideration of Plaintiff's *pro se* status, the Court will assess Plaintiff's claims against Defendant Osborne.

**1.    Unlawful Search and Seizure and Invasion of Privacy**

In conclusory fashion, Plaintiff alleges that Defendant Osborne "seized upon" and "searched for information on" Plaintiff's private property because he drove onto Plaintiff's property and stepped out of his police vehicle to speak with Plaintiff.  Dkt. No. 1 at ¶¶ 40-41, 96-97.  Similarly, Plaintiff concludes that Defendant Osborne invaded his property and "infringed upon Plaintiff's right to privacy by being on Plaintiff's property without a lawful warrant or probable cause of a crime."  Dkt. No. 1 at 102-103.  Plaintiff, however, does not allege that Defendant Osborne entered his property in a manner that offends the Constitution.  *See id.* at 40-46.

While the Fourth Amendment does protect the home and its curtilage, that protection does not extend to a home's "open fields"—that is, the areas of a property that "do not provide the setting for those intimate activities that the [Fourth] Amendment is intended to shelter from government interference or surveillance."  *United States v. Oliver*, 466 U.S. 170, 179 (1984).  A government intrusion into a home's open fields is therefore not an unreasonable search proscribed by the Fourth Amendment.  *Id.* at 177.  "[I]t is well settled under Supreme Court and Second Circuit precedent that [an] officer's entry onto the driveway for a police purpose (such as the

issuance of a summons) does not implicate any Fourth Amendment rights[.]" *Nasca v. Cnty. of Suffolk*, No. 05-CV-1717 (JFB)(ETB), 2008 WL 53247, at \*4 (E.D.N.Y. Jan. 2, 2008).  Indeed, the Second Circuit has stated that "[t]he route which any visitor to a residence would use is not private in the Fourth Amendment sense." *United States v. Reyes*, 283 F.3d 446, 465 (2d Cir. 2002) (citation omitted).  Therefore, "no Fourth Amendment search occurs when a law enforcement officer enters a home's driveway, walkway, or similar area that is accessible to the general public." *Nasca*, 2008 WL 53247, at \*5 (citing *Reyes*, 283, F.3d at 465); *see also Serby v. Town of Hempstead*, No. 04-CV-901 (DRH)(MLO), 2006 WL 2853869, at \*8 (E.D.N.Y. Sept. 30, 2006) ("Plaintiff cannot claim a reasonable expectation of privacy on the walkway or driveway that leads to his door or the unlocked screen door before the inner door to his house.").

Here, Plaintiff merely alleges that Defendant Osborne drove onto his property, stepped out of his car to speak with Plaintiff, and then left the property.  *See* Dkt. No. 1 at ¶¶ 40-41.  Plaintiff does not allege facts showing that Defendant Osborne intruded on any part of the property that was not accessible to the general public, nor any part in which he could claim a reasonable expectation of privacy.  Plaintiff also does not plausibly allege facts showing that Defendant Osborne searched or seized Plaintiff's person or Plaintiff's belongings.

As such, the Court finds that Plaintiff has not alleged that Defendant Osborne deprived him of any constitutional right.  Accordingly, the Court dismisses Plaintiff's claims for unlawful search and seizure and invasion of privacy against Defendant Osborne.

### 2.    Negligence

Plaintiff premises his claim for negligence against Defendant Osborne on the same factual allegations that underlie his unlawful search and seizure and invasion of privacy claims.  *See* Dkt.

No. 1 at ¶¶ 104-108. Because these allegations constitute intentional conduct, the Court dismisses Plaintiff's negligence claim against Defendant Osborne. *See supra* Section IV.B.5.[10]

### E.    Defendant Ouimet

Defendant Ouimet separately moves to dismiss Plaintiff's claims against him for coercion and negligence. Dkt. No. 10.[11] Defendant Ouimet argues that he is entitled to judicial immunity, *id.* at 4, and in the alternative, also argues that Plaintiff failed to timely file a notice of claim as required by state law and that both claims fail on the merits, *id.* at 5-8. Plaintiff did not oppose Defendant Ouimet's motion. *See generally* Docket.

"Courts may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed." *Felix v. City of New York*, 344 F. Supp. 3d 644, 654 (S.D.N.Y. 2018) (citation and internal quotation marks omitted); *see also Romeo & Juliette Laser Hair Removal, Inc., v. Assara I LLC*, No. 08-CV-442 (TPG), 2014 WL 4723299, at *7 (S.D.N.Y. Sept. 23, 2014) ("At the motion to dismiss stage . . . a plaintiff abandons a claim by failing to address the defendant's arguments in support of dismissing that claim."). A court, in its discretion, may deem a claim abandoned even after considering the reasonable allowances due to a *pro se* plaintiff. *See, e.g.*, *Staley v. Smart*, No. 23-CV-03546 (DEH) (VF), 2024 WL 3835518, at *14 (S.D.N.Y. July 30, 2024), *report and recommendation adopted by* 2024 WL 3835225 (S.D.N.Y. Aug. 14, 2024) (deeming certain of *pro se* plaintiff's claims abandoned because plaintiff did not respond to defendants' arguments as to those claims); *Johnson v. City of New York*, No. 16-CV-2879 (PKC) (LB), 2019 WL 2393716, at *4 (E.D.N.Y. June 6, 2019) (holding that *pro se*

---

[10] Because Plaintiff does not adequately plead any of his claims against them, the Court does not reach the defense of qualified immunity as to Defendants Hattenrath, Johnson, and Osborne.

[11] Defendant Ouimet also moves to dismiss a claim of malicious prosecution, Dkt. No. 10 at 4-5, but the Court notes that Plaintiff does not bring a claim for malicious prosecution against Defendant Ouimet, *see generally* Dkt. No. 1.

plaintiff abandoned claims because plaintiff failed to respond to defendants' argument that they should be dismissed); *but see Hogans v. N.Y.C. Comptroller's Office*, No. 23-CV-105014 (VSB) (OTW), 2025 WL 2783789, *4 n. 6 (S.D.N.Y. Aug. 26, 2025) (assessing each of *pro se* plaintiff's claims in turn even though plaintiff failed to respond to defendants' arguments).

Here, Plaintiff opposed the motion to dismiss filed by Defendants Hattenrath, Johnson, and Osborne, *see* Dkt. No. 27-1 at 1, but did not oppose the motion filed by Defendant Ouimet, *see generally* Docket. Accordingly, at no point does Plaintiff address Defendant Ouimet's arguments regarding judicial immunity, notice of claim, or the merits of Plaintiff's claims against Defendant Ouimet. Defendant Ouimet timely filed his motion and served it on Plaintiff, thereby putting Plaintiff on notice of Defendant Ouimet's arguments. *See* Dkt. No. 11. Thus, the Court deems Plaintiff's claims against Defendant Ouimet abandoned and dismisses them with prejudice. *See, e.g.*, *Staley*, 2024 WL 3835518, at *14 (dismissing with prejudice after deeming claims abandoned).

## V.    CONCLUSION

Accordingly, the Court hereby

**ORDERS** that Defendants Hattenrath, Johnson, and Osborne's motion to dismiss, Dkt. No. 24, be **GRANTED** in its entirety; and the Court further

**ORDERS** that Defendant Ouimet's motion to dismiss, Dkt No. 10, be **GRANTED** in its entirety; and the Court further

**ORDERS** that Plaintiff's Complaint in its entirety be **DISMISSED with prejudice**; and the Court further

**ORDERS** that the clerk serve a copy of this Clerk serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: March 9, 2026
      Albany, New York

Anne M. Nardacci
U.S. District Judge